UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

MARLITE, INC.

    Plaintiff.
v.                                                                    Civil Action No. 10·CV·23641·MORENO/TORRES
ALVIN.ECKENROD and
MODULAR WOOD SYSTEMS, INC.
    Defendants/3rd Party Plaintiffs

**v.**
JERRY DAGEN AND JAMES ROBBINS,

    Third Party Defendants.
_____/

### *DEFENDANTS' ALVIN ECKENROD AND MODULAR WOOD SYSTEMS, INC.*
### *JOINT MOTION IN LIMINE*

    Defendants Modular Wood Systems, Inc. ("Modular") and Alvin Eckenrod ("Eckenrod") seek an order in limine as to the following items which it seeks to have excluded from trial of this Cause:

    1. The court should bar any reference to the Asset Purchase Agreement (Doc. 1-3), or any testimony on the negotiation of said agreement on the grounds of irrelevance and confusion. Marlite claims various theories and ills associated with this agreement which was neither signed nor negotiated by Eckenrod; the only relevant document contained therein is Eckenrod's personal NCA through mere incorporation. Marlite seeks to confuse the jury by references to provisions in the APA which have no application to Eckenrod or Modular due to the permission to sell slatwall in Florida contained in Eckenrod's NCA, and by operation of law under F.S. '542.335(1)(a). As Marlite has already claimed a breach by Eckenrod of the NCA in

count 7, then it should proceed on that theory, especially since it never sued Precision, its officers or its trustees for any breach of the APA, and has waived such claims by not bringing them timely and not withholding from the 'holdback' funds paid out a year later. Simply put, the APA (Doc. 1-3) is irrelevant to this lawsuit. Eckenrod is not a party to it. An interference claim cannot be maintained against Eckenrod because he has rights to compete thereunder through his independent NCA that was incorporated therein.  There can be no fraudulent inducement due to the uncontested fact that Eckenrod did not negotiate the APA and had no power to do so as he was neither an officer or director. There can be no negligent misrepresentation for the same reason notwithstanding the bars imposed by the economic loss rule, the parol evidence rule, and the actual disclosure of competition by Modular in the NCA exclusion.  Marlite simply seeks to perform a '3 card monte' on the jury by flashing confusing contracts up on a display and protesting a nexus where none exists.

    2.  Marlite should be precluded and barred from referencing the preliminary injunction hearing and Opinion in Marlite 1, as Eckenrod and Modular were not parties to the action at that time, America Canas ("Canas") was never a party to this action; references thereto would be unfairly prejudicial and would mislead the jury as to the requisite burdens of proof and weight accorded to the decision, and are irrelevant to the causes of action in this case.

    3.  The Court should exclude any testimony from Marlite representatives regarding Marlite's 'confidential information' at trial.   Marlite has admitted in its briefs that the information which Modular had was its own knowledge. There is no evidence of any transfer to Modular of Marlite's purported confidential information, nor admittedly was there any

information used by Modular which was not already known by Modular through its years of experience in the market regarding the sale of slatwall.  There is simply no evidence that any information, not already known by Modular, was used by any defendant in this case.  Any attempt to manufacture such use or transfer of 'confidential information' is pure speculation.

    4. The court should exclude any testimony and any reference to the 2002 Shareholder's agreement attached as Exhibit C (Doc. 1-5) to the Complaint on relevance and unfair prejudice. First, the document was not relied upon by Plaintiff when it purchased Precision Wood Products, Inc., nor was it assigned to Marlite and Marlite cannot and does not claim any rights thereunder.  Second, Dagen and Robbins testified that there was no breach of said agreement by Modular or Eckenrod as it related to slatwall sales. Third, Eckenrod's Non-Competition agreement specifically permits him to continue operations of Modular in competition against Plaintiff after the January 31, 2006, closing date.  Plaintiff's arguments that the agreement is somehow evidence that Eckenrod breaches agreements 'willy-nilly' is simply non-existent in this case.

    5.  The court should exclude any damage calculation by Plaintiff based upon any sales of slatwall because such sales (1) are irrelevant[1] and (2) are based upon speculation and

---

[1] Modular is permitted to sell slatwall in Florida under any fair reading of Eckenrod=s non-compete agreement (Doc. 1-4, sec. 1, pg. 3).  Thus, such sales are not relevant to any damage computation.  It is undisputed that Eckenrod never made any sales of slatwall to anyone at anytime.  Such was the purpose of the Modular Wood Systems, Inc., the corporate vehicle.

conjecture[2], and (3) are expressly permitted under Sec. 1, pg. 3 of the NCA.  Likewise, Plaintiff's claim of loss of good will value is pure conjecture and speculation.  Essentially, Plaintiff's failed attempts to purchase Modular cannot be translated into a claim of loss of goodwill purchased from Precision.  Plaintiff purchased Precision during collateral negotiations to purchase Modular (for substantially more money).  It's failure to consummate a purchase of Modular was simply a bad business judgment, given that it had expressly permitted Modular to continue competing.  Plaintiff has only itself to blame for its own shortsightedness.

As competition with Marlite by Modular was permitted pursuant to Eckenrod's Non-Competition Agreement (Doc. 1-4, Sec. 1, pg. 2-3),  there was no wrongful act by Eckenrod for sales of slatwall in Florida made by Modular.  Rather, Marlite's lost sales are purely attributed to competition, market decline or declining market life of slatwall as a saleable product. Mr. Moll does not take into account that Eckenrod's N-CA expired at the end of January 2009 or that, since the date of the APA, January 31, 2006, Eckenrod was always allowed to continue operations of Modular in competition with Marlite.. Rather, Mr. Moll's opinion assumes that Modular was not permitted to compete in Florida.

---

[2]      Mr. Moll's damage calculations speculate that sales of slatwall by Modular to any client of Precision anywhere in the world after the sale of assets of January 31, 2006, would be a sale 'owned' by Plaintiff, and assessed as 'damages' against Eckenrod personally.  First, there is no support for the leap of logic as to ownership of such a client.  Second, Eckenrod is not liable for the acts of a disclosed principle under agency law, especially where such competition is specifically permitted.  Third, the sales figures utilized by Plaintiff's expert are mostly outside the state of Florida, and the sales to such customers were being made both before and after the sale of asset date.

The court cannot hold either Eckenrod or Modular to any restrictive trade provisions in the Asset Purchase Agreement as a matter of law. F.S. '542.335(1)(a)[3]. Thus, the beach of any covenant in the APA (or in the non-competition agreement) referred to in Mr. Moll's opinion has no validity as it is entirely based on the assumption that Modular could not compete with Marlite which is at odds with Florida law as to the APA and is also at odds with the clear contract language of the non-competition agreement.

6. The court should exclude any reference to the judgment against either Modular or Eckenrod under the case of Marlite v. Canas, Eckenrod and Modular (Marlite I) due to lack of relevance and undue prejudice. Neither Modular or Eckenrod were found to be in any breach of the Asset Purchase agreement in that case. Additionally the tort of interference dealt with interference with Canas' employment agreement, not the APA. Although Eckenrod was held liable for breaching the anti hiring section 3 of the Non-Competition agreement by hiring Canas, this instant case focuses on whether Eckenrod could continue selling slatwall into Florida under Section 1 of his non-competition agreement (which expressly permits such sales), which agreement was specifically incorporated and made a part of the Asset Purchase Agreement to which Eckenrod is not a signatory or a party.

7. The court should bar the introduction of any parol evidence to attempt to controvert the plain language of any of the agreements. Due to the integration clause in the Asset Purchase Agreement, Plaintiff is estopped (or contractually precluded) from arguing or

---

[3] "A court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought."

introducing parol evidence that Modular could not compete against Precision. Although this should seemingly be an issue of law, it would be error for the court to permit an interpretation which is contrary to the plain language of the integrated agreement.

8. The court should bar any evidence of malice. Such 'evidence' is proffered solely to inflame the passion of the jury and is simply irrelevant in the face of an express competition privilege established by the contract, notwithstanding the tort claims that violate the economic loss rule, the parol evidence rule, the privilege to compete in Florida, the bar imposed by F.S. '542.335(1)(a), and the lack of any evidence of malice.

9. The court should bar any evidence regarding any alleged representations that Eckenrod told Marlite that Modular was not selling slatwall in Florida during the period 2006-2009 under the parol evidence rule, the economic loss rule, the integration clause, (Doc. 1-3, pg. 31, §13.19 in conjunction with Doc. 1-4, ppgs. 2-3, Sec. 1), Eckenrod's exclusion in his NCA, and Marlite's admission that it was repeatedly told that Modular was making sales into Florida through at least the Home Depot.

10. The court should bar any reference to the personal guaranty signed by the shareholders of Precision on the ground of relevance and confusion if an attempt is made to introduce the same in Marlite's case in chief. Marlite does not make any claim on this document. The guaranty is merely a guaranty of payment, not of performance, and is irrelevant to the sale of slatwall which is specifically permitted under Eckenrod's NCA. It's only relevance is a limitation of damages in favor of Eckenrod and should only be permitted on rebuttal or defense.

11.  The court should exclude any evidence relating to Precision's shareholders' consent for the Precision to sell its assets on the ground of relevance and confusion.  Marlite simply seeks to introduce the same in an attempt to attach personal liability to him and confuse the jury with a specious argument that by signing such authorizations as a shareholder, he becomes personally bound by the APA.  It's a smoke and mirrors play.

12.  The court should exclude any reference to any purported representations made by Precision in the negotiations of the APA as hearsay, barred by the integration clause, the parol evidence rule and the incorporated NCA agreements which permits Modular to compete.  Such parol evidence is only admissible when it corroborates a provision - not when it contradicts a clear provision.   Any other treatment would be confusing to a jury.

Thus, Eckenrod and Modular respectfully request that the Court exclude the foregoing items and evidences from admission at trial for the reasons therein.

## MEMORANDUM IN SUPPORT OF MOTION

### *STANDARD OF REVIEW*

Pursuant to Federal Rule of Evidence 402, all relevant evidence is admissible, except as otherwise provided by the Constitution, statutes, and rules. Evidence which is not relevant is not admissible. Fed. R. Evid. 402. Although relevant, evidence may be excluded under Federal Rule of Evidence 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury * * *.  Determinations as to the

admissibility of evidence are in the discretion of the trial judge[4].

A motion in limine is designed to prevent a trial from becoming a confusing circus. Notwithstanding that Plaintiff=s complaint is a confusing jumble of shotgun allegations, the central thrust is a claim that slatwall sales were improperly made in Florida from 2006-2009 by Modular Wood, and that such sales were unjustified.  In counterpoint, Modular and Eckenrod point to the specific permission to compete contained in the NCA (Doc. 1-4, pgs. 2-3, Section 1) as both permission and justification to make such sales.  Defendants suggest that Plaintiff's case is merely a strategy to drive Modular out of a dying slatwall business which crumbled from a stale product and suffered from a stale economy.  Slatwall can be compared to a hula hoop in this regard.  Once they were pretty 'cool'.  Now you can't give them away.  Marlite seeks to obtain by confusion which it could not achieve by honest competition.

Overview of claims:

It's instructive to review the shotgun complaint (Doc. 1) to analyze Plaintiff's claims in light of the exhibits attached to it, in particular the plain language of Doc. 1-4, Eckenrod's non competition agreement (NCA).   Marlite sued Eckenrod in 6 counts of a seven count complaint, and seeks injunctive relief against Modular in Count 5 for alleged breach of an asset purchase agreement (APA) to which Modular is not a party.

Count one is for a breach of the Asset Purchase Agreement between Precision Wood Products, Inc. and Marlite (Doc. 1-3).  Marlite does not allege that it has been damaged in

---

[4] *Jones v. Automobile Ins. Co. of Hartford, Conn.*, 917 F.2d 1528, 1537 (11th Cir. 1990).

count 1. Also problematic with this count is that Eckenrod and Modular are not a signatories to this agreement and enforcement of the same against either of them is barred under '542.335(1)(a) ("A court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought.") Moreover, §7.10 refers to Eckenrod's Non-Competition Agreement (NCA) as forms 'attached' to the APA, and §13.19 is an 'integration' clause precluding reliance by anyone on any other representations not contained in the agreement or in the attachments.  As a result Eckenrod's NCA became a part of the APA under which Eckenrod and Modular  has enforceable rights (which could be enforced directly under the NCA - but Plaintiff set it up this way, so the otherwise irrelevant APA is discussed as a 'container' of the NCA).

Under section 1 of Eckenrod's NCA (Doc. 1-4, pg. 3), Eckenrod has the express right to:

> **" \* \*\* own securities of corporations which are listed on a national securities exchange or traded in the national over~the-counter market in an amount which shall not exceed five percent (5%) of the outstanding shares of any such corporation <u>and may after the Closing Date of the Asset Purchase Agreement continue to own, operate and conduct in competition with the Buyer and as conducted as of the Closing Date of the Asset Purchase Agreement</u>, the following businesses \* \* \* " Modular Wood Systems, Inc." \* \* \*** .

The NCA also has a 'supremacy' clause stating that the covenants in section 1 of the NCA:

> **" * * * shall be construed as an agreement independent of any other provision of this Non-Competition Agreement or any other agreements between the parties. "**

Consequently, under §7.10 and §13.19 of the APA, Eckenrod's rights under his NCA to compete through Modular are also enforceable under the APA through their incorporation into that agreement.  These rights are independent of either Marlite's or Precision's rights under the APA.  Thus, a breach of contract claim based upon a purported violation of any provision in the APA by Eckenrod is fantasy and has no legal basis.  If any claim could be made by Marlite against Eckenrod, it would be limited to a claim under his NCA.  The APA is simply irrelevant.

Count 2 is an alternative claim for 'Interference With Contract by Alvin Eckenrod'.  This claim is based upon a purported unjustified sale of slatwall in competition against Marlite, notwithstanding Eckenrod's express right to compete which is incorporated into the APA. Damages in this claim is also based upon the sale of slatwall in Florida by Modular from the period of time spanning January 31, 2006 through May 15, 2009 (Doc. 1, Pg. 11, ¶58). Marlite simply ignores the exclusion contained in Eckenrod's NCA which permits sales of slatwall in Florida by Modular, the same as a publicly held company.  Marlite cannot explain how someone can interfere as a third party with a contract to which express rights are defined. Ordinarily, such circumstances causes interference claims to fail.

Count 3 is a claim for 'Fraudulent Inducement' against Eckenrod, the theory being that Marlite was induced into entering into the APA when Eckenrod purportedly misrepresented that neither he nor Modular were 'doing business in Florida in competition with Precision'.

(Doc. 1, pg. 11, ¶62). Notwithstanding that the allegation conflicts directly with the NCA exclusion contained in Sec. 1, pg. 3 of the NCA (Doc. 1-4, pg. 3 - which indicates continuing in competition), and the integration clause in Doc. 1-3, pg. 31, §13.19 which incorporates the NCA, the allegation also directly contradicts Marlite's president's admission that he had been told from the very beginning of the negotiations by Dagen and Robbins that Modular was effecting sales into Florida through at least the Home Depot account. Problematic with the count for fraudulent inducement is also that such would vitiate the contract resulting in a rescission, yet Marlite does not seek this remedy. Instead it seeks unspecified damages resulting from '* * * its justifiable reliance on Eckenrod's representations.'. Marlite does not state what, if any, damages it suffered. If its based on sales of slatwall, such cannot be sustained as permission to compete was granted to Modular. If damages are based on 'no justification', the privilege to compete 'kicks in' which is an absolute privilege in Florida.

Count 4 claims 'Negligent Misrepresentation' against Eckenrod, erroneously presuming a duty to disclose competition of slatwall sales in Florida by Modular from Eckenrod, (Doc. 1, pg. 12, ¶74), and presuming a breach of such duty. This ignores the clear language of the NCA which permits Modular to continue in competition against Marlite, the Florida privilege to compete, the integration clause in the APA, Marlite's admissions that it knew that Modular was making sales of slatwall in Florida, and Eckenrod's lack of any authority to speak on behalf of Precision for anything (Eckenrod was neither an officer or a director of Precision). Damages again relate to sales of slatwall in Florida. If the NCA is introduced into evidence, there is no misrepresentation or lack of justification, as competition is disclosed therein.

Count 5 seeks injunctive relief against Modular for violation of the 5 year covenant not to compete in section V of the APA (to which Modular is not a signatory thus precluding its enforcement under F.S. &542.335(1)(a))  in spite of the express permission to compete contained in the NCA which is incorporated into the APA.

Count 6 seeks damages against Eckenrod for breach of the NCA, for the sale of slatwall in Florida by Modular for the period January 31, 2006 through May 15, 2009,(Doc. 1, pg. 14, ¶91 & 95).  If competition is permitted under the NCA, in the form of sales of slatwall, there simply is no damage or liability.

Count 7 seeks injunctive relief under section 1 of the NCA in spite of the exclusion contained in section 1. (Doc. 1-4, pg. 3).

A review of the claim reveals that its central focus is a complaint that Eckenrod allowed Modular to effect sales of slatwall in Florida from 2006 to the present and that such sales were not justified.  All these various claims should be contained in Count 6, breach of contract.  The jury could then make a decision as to whether Eckenrod's company was justified or not in making sales of slatwall in Florida from 2006 forward.  The other claims and torts are foisted upon this court in the hopes that enough confusion can be created in order to capitalized on Plaintiff=s advantage in speaking first and last.  It's merely a strategy to confusr.  It was never a case.

**WHEREFORE**, defendants pray that the court follow Florida's parol evidence rule, Florida's economic loss rule, and  Florida's rules on construction of contracts and preclude Plaintiff from injecting confusion and hyperbole into the trial of this matter.

WE HEREBY CERTIFY that the foregoing motion has been made available to counsel for Marlite and the third party defendants, Dagan and Robbins prior to filing.  Counsel for Marlite objects to the relief sought in the Motion, and counsel for the third party defendants has not replied.

### *CERTIFICATE OF SERVICE*

WE HEREBY CERTIFY that on March 8, 2012, the foregoing document was electronically filed with the clerk of the Court using CM/ECF.

       Respectfully Submitted,

       Barnard Law Offices, L. P.
       9655 South Dixie Highway, Suite 108
       Miami, Fl. 33156
       (305) 665-0000
       Fax: (305) 669-9666


By:_____/S/_____
       Andrew C. Barnard, Esquire


By:　　　　　/S/　　　　　　　
       Lance Armstrong, Esquire
       Florida Bar No: 281638
       4302 Hollywood Blvd. #310
       Hollywood, Florida 33021
       (305) 547-2555