UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 10-23641-CIV-MORENO

MARLITE, INC.,

    Plaintiff,

vs.

ALVIN ECKENROD and MODULAR WOOD
SYSTEMS, INC.,

    Defendants,

vs.

JERRY DAGEN AND JAMES ROBBINS,

    Third Party Defendants.
_____/

## ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION

THE MATTER was referred to the Honorable Edwin G. Torres, United States Magistrate Judge for a Report and Recommendation on Parties' Motions for Summary Judgment (**D.E. Nos. 67, 68, 69, 101**). The Magistrate Judge filed a Report and Recommendation (**D.E. No. 111**) on **July 13, 2012**. The Court has reviewed the entire file and record. The Court has made a *de novo* review of the issues that the objections/"exceptions" to the Magistrate Judge's Report and Recommendation present. The Complaint, filed on October 8, 2010, alleges seven counts: two counts of breach of contract, one for tortious interference, one for fraudulent inducement, one for negligent misrepresentation, and two for injunctive relief. The Court affirms Magistrate Judge Torres's Report and Recommendation in its entirety for the reasons that follow.

## I. Background

### *A. Factual Background*

In January 2006, Marlite Inc. acquired the assets of Precision Wood Products Inc., a slatwall business located in Miami, Florida. At that time, Precision was owned by Defendant Alvin Eckenrod and three other individuals including Third Party Defendants James Robbins and Gerald Dagen. At that time, Eckenrod was also the sole shareholder and the only officer of Modular Wood Systems Inc. In exchange for $ 3 million dollars, Marlite acquired, among other assets, all of Precision's customer lists, accounts and trade receivables, intellectual property, all contracts with third parties, documents and records, tangible and intangible property used in or related to Precision's business, and Precision's goodwill. In addition, Article V of the Asset Purchase Agreement between Precision and Marlite contained a five-year non-competition provision which provided that neither Precision nor any of its "affiliates and/or related parties" would engage "in competition with the Business as it is conducted immediately prior to the Closing within the following territories: Georgia and Florida." (Exhibit A to Complaint, D.E. 1-3). In Section 3.29 of the APA, the Sellers represented and warrantied to Marlite that no entity "owned in whole or in part by any shareholder" was selling slatwall in competition with Precision in the State of Florida.

Additionally, Eckenrod executed an individual Non-Competition Agreement on January 31, 2006. The Non-Compete stated that Eckenrod would not compete with Marlite in Florida for a period of three years after the Precision asset purchase closing date. "Notwithstanding" that clause, Eckenrod was authorized to "continue to own, operate and conduct in competition with [Marlite]" his businesses Modular Wood Systems, Inc. and Interlam, Inc. (Exhibit B to Complaint, D.E. 1-4).

*B. Procedural Background*

Marlite filed an initial suit in 2009, alleging misappropriation of trade secrets, tortious interference and breach of contract against Modular and Eckenrod. *See Marlite, Inc. v. Alvin Eckenrod, et al.*, No. 09-22607-CIV-TORRES (S.D. Fla. 2009) (*Marlite I*). Marlite's claims in that case sounded in breach of contract, tortious interference, misappropriation of trade secrets, and injunctive relief, and they arose from Eckenrod and Modular's alleged improper hiring of a former Marlite employee and the solicitation of Marlite's customers by the employee on Modular's behalf. Following a grant of partial summary judgment in Marlite's favor by Judge Graham, the case then went to jury trial before Magistrate Judge Torres as a consent trial and was decided in Marlite's favor on some claims. The judgment was affirmed by the Eleventh Circuit in an unpublished opinion. *See Marlite, Inc. v. Canas*, 453 Fed. Appx. 938 (11th Cir. 2012). During sworn testimony in *Marlite I*, Defendant Eckenrod admitted to making inaccurate statements in his sworn discovery responses. Because of the newly discovered evidence through Eckenrod's statements, Marlite then filed a new lawsuit in October of 2010, which is the case currently before the court. Marlite's complaint seeks damages as a result of alleged violations of the APA and non-compete, fraudulent inducement and tortious interference as well as injunctive relief against the two defendant parties. Marlite brings the action regarding sales of slatwall in Florida by Modular and Eckenrod between January 31, 2006 and May 15, 2009. Eckenrod then filed a third party complaint seeking indemnity from two former trustees of Precision, Robbins and Dagen.

**II. Standard of Review**

This Court reviews *de novo* the determination of any disputed portions of the Magistrate Judge's Report and Recommendation. *U.S. v. Powell*, 628 F.3d, 1254, 1256 (11th Cir.2010). "In

order to challenge the findings and recommendations of the magistrate [judge], a party must ... file ... written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.... Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report ... to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate [judge]." *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir.1989). *See also* Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1). "[W]henever any party files a timely and specific objection to a finding of fact by a magistrate, the district court has an obligation to conduct a *de novo* review of the record with respect to that factual issue." *Stokes v. Singletary*, 952 F.2d 1567, 1576 (11th Cir. 1992) (quoting *LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir.)). "It is improper for an objecting party to ... submit [ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R." *Camardo v. Gen. Motors Hourly–Rate Employees Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y.1992)

### III. Analysis

Eckenrod objects to the Magistrate Judge Torres' Report and Recommendations on eight grounds. First, Eckenrod objects that the Magistrate Judge Torres draws faulty inferences from the jury verdict in *Marlite I* and that he misinterprets and misapplies the jury's verdict as to the Non-Compete. Second, Eckenrod objects that Magistrate Judge Torres rewrites the contracts before him for interpretation on the breach of contract and breach of non-compete. Third, Eckenrod objects that Magistrate Judge Torres has misapplied the doctrine of collateral estoppel. Fourth, Eckenrod objects

that Magistrate Judge Torres failed to construe the release between Eckenrod, Robbins, and Dagen by not reading the two documents *in pari materia*. Eckenrod's other four objections relate to the defendant's contract and tort defenses; each of these objections lays out a rehash of arguments presented in the original summary judgment motions and are not entitled to *de novo* review.

1. *Eckenrod's* Marlite I *Objections*

The Court turns first to Eckenrod's objections regarding factual findings and the jury verdict in *Marlite I*. What Eckenrod calls clearly erroneous is a plausible inference and directly tied to the instructions given to the jury. The jury specifically replied 'no' to the question whether Modular was subject to a five year non-compete. While Eckenrod is correct that the length of Modular's non-compete is not part of the jury's determination per the verdict form from *Marlite I*, the Defendant disingenuously does not provide the jury instructions given before the deliberation. Those instructions stated

> "If you determine that the parties' intent for these agreements was for Mr. Eckenrod to refrain from competing with Marlite's Florida businesses *only for a three year period*, then your verdict should be for Defendants on the breach of contract claim. If you find by the greater weight of the evidence that Marlite has shown that the parties intended that Modular be subject to a five year noncompetition period, *in addition to* the three year non-competition period that applied to Mr. Eckenrod personally, then your verdict should be for Marlite on this claim."

Jury Instructions in *Marlite I* [D.E. 197, emphasis added]. By not including this information in his briefing, Defendant Eckenrod misleads the Court regarding the Magistrate Judge's factual findings. The second and fourth specific objections are overruled.

2. *Eckenrod's Contract Construction Objection*

The Defendant next objects that Magistrate Judge Torres' construction of contract language

operates to rewrite the contracts before him. The Non-Compete at issue reads plainly:

> Notwithstanding the above, Selling Shareholder...may after the Closing Date of the [APA] continue to own, operate and conduct in competition with the Buyer and as conducted as of the Closing Date of the [APA], the following businesses owned by the Selling Shareholder: Modular Wood Systems, Inc. and Interlam, Inc."

D.E. 1-4 at p. 3. Both Marlite and Eckenrod move for summary judgment on the basis of this language. Marlite argues in its motion for partial summary judgment that Eckenrod's Non-Compete was valid and enforceable, and allowed Modular to compete with Marlite as it had done prior to the Closing Date of the APA. Eckenrod, on the other hand, reads the Non-Compete more expansively as allowing any type of competition in addition to the competition as Modular had conducted itself prior to the Closing Date of the APA. Both rely on extrinsic evidence--evidence not contained solely in the text of the Non-Compete--to interpret the contract. "[C]ontract language that is unambiguous on its face must be given its plain meaning." *Green v. Life & Health of Am.*, 704 So. 2d 1386, 1391 (Fla. 1998). A finding that language is ambiguous or unclear must precede the use of extrinsic evidence. *See Acceleration Nat. Serv. Corp. v. Brickell Fin. Services Motor Club, Inc.*, 541 So. 2d 738, 739 (Fla. 3d DCA 1989). ("Before extrinsic matters may be considered by a court in interpreting a contract, the words used on the face of the contract must be ambiguous or unclear.") For contract interpretation "the language used ... is the best evidence of the parties' intent." *Hurt v. Leatherby Ins. Co.*, 380 So. 2d 432, 433 (Fla. 1980). The Court finds a material issue of disputed fact exists here, one where "the evidence presents a sufficient disagreement to require submission to a jury. " *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Indeed, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then

the court should deny summary judgment." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). In its objection, Eckenrod introduces wholly new arguments regarding Marlite's parallel negotiations to purchase Modular. These assertions only add credence to the gulf in understanding underlying whether a breach of the Non-Compete occurred. As such, Eckenrod's objection is overruled.

3. *Eckenrod's Collateral Estoppel Objection*

Eckenrod next objects that neither the jury nor the summary judgment in *Marlite I* addressed their 'global exemption' defense. Plaintiff Marlite counters in its response to the objections that the Eleventh Circuit stated that it had considered all of the briefing and found that there was no merit to any of Eckenrod's arguments on appeal. Torres notes that this defense was decided in the first jury trial, *Marlite I*. Furthermore, under the theory of collateral estoppel or issue preclusion, the issue of the global exemption has already been decided against Eckenrod. For example, when Judge Graham granted partial summary judgment in Marlite's favor for Eckenrod's violation of Section 3 of the Non-Compete, he implicitly rejected any claim that Eckenrod would through the "global exemption" be "immune from any claim of breach of contract."

For collateral estoppel to apply, it must be demonstrated that "(1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the

prior proceeding." *Christo v. Padgett*, 223 F.3d 1324, 1359 (11th Cir. 2000) (citations omitted). On the first prong, whether a global exemption applied was crucial to the claim of breach of contract. No contract could have been breached if Eckenrod was exempted from compliance by virtue of such exemption. Second, the issue was raised at the Eleventh Circuit and thus actually litigated in the prior proceeding. Third, the Eleventh Circuit declared that Eckenrod's arguments were "without merit;" if the exemption were as important as Eckenrod states in his objections, then the Eleventh Circuit would have considered it a "critical and necessary" part of the judgment in the first action. *See Marlite, Inc. v. Canas*, 453 Fed. Appx. 938 (11th Cir. 2012). Finally, Eckenrod has had a full and fair opportunity to make the argument before Judge Graham, Judge Torres, and a three judge panel of the Eleventh Circuit. As such, collateral estoppel bars this court from considering the global exemption. Eckenrod's objection is overruled.

4. *Eckenrod's* In Pari Materia *Objection*

Eckenrod objects to Magistrate Judge Torres' recommendation that this Court enter judgment in the Third Party Defendants' favor on the grounds that any claims that Eckenrod may have had against Dagen and Robbins was released by a 2007 settlement agreement. Eckenrod sued Dagen and Robbins in 2006 following the initial Precision sale. After mediation and entering into a mediation agreement, Eckenrod received an additional $300,000 and released any claims that could have been made through June of 2007. Eckenrod then voluntarily dismissed his claims with prejudice. Neither Eckenrod nor Dagen and Robbins dispute that the negotiation and sale of the Precision assets occurred before June of 2007. Instead, Eckenrod argues that the mediation agreement he signed must be read in conjunction with the later settlement agreement.

-8-

However, Third Party Defendants point out that there was an eight day gap between the signing of the two agreements, unlike the one day gap in the case on which Eckenrod relies. *See International Ship Repairs & Marine Servs. Inc. v. General Portland, Inc.*, 469 So.2d 817 (Fla. 2d DCA 1985). Dagen and Robbins reason that without any incorporation by reference or integration, that a court is not compelled to read two documents together. This Court agrees. A liability release bars plaintiff's later claims when there is no dispute that it is valid. *Shultz v. Florida Keys Dive Center, Inc.* 224 F.3d 1269, 1273 (11th Cir. 2000). "[C]ontract language that is unambiguous on its face must be given its plain meaning." *Green v. Life & Health of Am.*, 704 So. 2d 1386, 1391 (Fla. 1998). The release does not does not include any language integrating the mediation agreement, and as such, must be construed on its plain terms. Those plain terms release "of and from, all, and all manner of action, and actions and causes of action ... claims and demands whatsoever ... for, upon, or by any reason of any matter, cause or thing, whatsoever, from the beginning of the world to the day of these presents, including without limitation all claims raised or which could have been raised in that certain case..." [D.E. 101, Exhibit A]. Eckenrod's objection is overruled.

### 5. *Eckenrod's Contract and Tort Defenses*

The remaining four objections that Eckenrod raises all relate to contract and tort defenses to counts that Magistrate Judge Torres' recommends should be submitted to a jury for determination at trial. It should be noted that Eckenrod concedes that these arguments are rehashes of points he raised in his summary judgment and in each objection incorporates his arguments from his motion for summary judgment. "It is improper for an objecting party to ...

submit[ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge." *Camardo v. Gen. Motors Hourly–Rate Employees Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y.1992) . Nevertheless, none of Eckenrod's contract and tort defenses can prevail in summary judgment as they do not apply as a matter of law. Florida courts have made clear that "[t]he law is well established that the economic loss rule does not bar tort actions based on fraudulent inducement and negligent misrepresentation." *Allen v. The Stephan Co.*, 784 So.2d 456, 457 (Fla. 4th DCA 2000); *see also Moransais v. Heathman*, 744 So.2d 973 (Fla.1999); *PK Ventures, Inc. v. Raymond James & Assocs., Inc.*, 690 So.2d 1296 (Fla.1997). The distinction for purposes of the economic loss rule is whether fraud occurs "in connection with misrepresentations ... to enter into a transaction" or whether fraud occurs in "the performance of the contract." *Allen*, at 457. Both of Marlite's counts alleging tortious interference and negligent misrepresentations fall in the former category; the economic loss rule cannot apply as a matter of law. Neither can the parol evidence rule apply where there is an allegation of fraudulent inducement to a contract. *Lou Bachrodt Chevrolet, Inc. v. Savage*, 570 So. 2d 306, 308 (Fla. 4th DCA 1990); *Tinker v. De Maria Porsche Audi, Inc.*, 459 So. 2d 487, 491 (Fla. 3d DCA 1984)("when fraud enters into a transaction to the extent of inducing a written contract, the parol evidence rule is not applicable.") Finally, issues of disputed fact prevent summary judgment as to the counts of negligent misrepresentation or fraud. Eckenrod's objections themselves raise disputed issues of material fact and the disagreements between Marlite's principal and Eckenrod over assurances given to enter into the APA. These credibility determinations are classic examples of disputed facts that should properly be submitted to a jury. The Defendant's

remaining objections are overruled.

### IV. Conclusion

For the above reasons, it is

**ADJUDGED** that United States Magistrate Judge Edwin G. Torres's Report and Recommendation **(D.E. No. 111)** on <u>**July 13, 2012**</u> is **AFFIRMED** and **ADOPTED** and all objections to the same are **OVERRULED**. Accordingly, it is

**ADJUDGED** that:

(1) Plaintiff Marlite's Motion for Partial Summary Judgment (D.E. No. ) is DENIED.

(2) Defendant Eckenrod's motion for summary judgment is GRANTED IN PART and Counts 1 and 2 of the Complaint are DISMISSED without prejudice.

(3) Defendant Eckenrod's motion for summary judgment is DENIED IN PART as to all other issues.

(4) Defendant Modular's motion for summary judgment is GRANTED IN PART and Count 5 of the Complaint is DISMISSED without prejudice.

(5) Defendant Modular's motion for summary judgment is DENIED IN PART as to all other issues.

(6) Third Party Defendants' motion for summary judgment (D.E. No. ) is GRANTED. Judgment is entered on behalf of the Third Party Defendants.

DONE AND ORDERED in Chambers at Miami, Florida, this 20 day of August, 2012.

                                                          _____
                                                          FEDERICO A. MORENO
                                                          UNITED STATES DISTRICT JUDGE

Copies provided to:

United States Magistrate Judge Edwin G. Torres

Counsel of Record